IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **AALLIYAH JEFFERSON AND RACHAEL MADDIX,**<br><br>     **Plaintiffs,**<br><br>  vs.<br><br>**1715 NORTHSIDE DRIVE, INC. d/b/a DIAMOND CLUB, VERONICA ENTERPRISES, INC. d/b/a VLive formerly known as DIAMONDS OF ATLANTA, and CARMEN POPOVITCH,**<br><br>     **Defendants.** | Civil Action No. _____ |

---

### COMPLAINT

---

Plaintiffs Aalliyah Jefferson ("Jefferson") and Rachael Maddix ("Maddix")

bring this complaint against Defendants 1715 Northside Drive, Inc., d/b/a Diamond

Club ("1715"), Veronica Enterprises, Inc., d/b/a VLive formerly known as

Diamonds of Atlanta ("Veronica"), and Carmen Popovitch ("Popovitch")

(collectively "Defendants") and show the Court as follows:

## 1.  INTRODUCTION

1.

This is a wage and hour case. Defendants operate two Atlanta nightclubs under

the trade names "Diamond Club" and "VLive", which was formerly known as "Diamonds of Atlanta". These clubs feature entertainment in the form of nude female dancing. Defendants employed Plaintiffs as dancers at these nightclubs; but misclassified them as independent contractors. Plaintiffs' sole compensation came in the form of tips from Defendants' patrons. Defendants also required that Plaintiffs pay kickbacks to them as conditions of employment.

## 2. JURISDICTION AND VENUE

2.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution and FLSA §16(b), 29 U.S.C. §216(b), 28 U. S.C §§ 1331 and 1337, because this case arises under the FLSA, a federal statute that affects interstate commerce.

3.

Venue properly lies in the Northern District of Georgia pursuant to 28 U.S.C. § 1391 because the principal offices of 1715 and Veronica are located in this judicial district, because Popovitch resides in this judicial district, and because a substantial portion of the events giving rise to the claims herein arose in this judicial district.

## 3.    PARTIES

### 4.

Jefferson is a natural person who resides in DeKalb County, Georgia

### 5.

Maddix is a natural person who resides in Rockdale County, Georgia.

### 6.

1715 is a domestic corporation organized under the laws of the State of Georgia.

### 7.

1715 is subject to the personal jurisdiction of this Court.

### 8.

1715 may be served with process through its registered agent for service, Carmen Popovitch, at 1715 Northside Drive, NW, Atlanta, Georgia 30318.

### 9.

Veronica is a domestic corporation organized under the laws of the State of Georgia.

### 10.

Veronica is subject to the personal jurisdiction of this Court.

11.

Veronica may be served with process via service on its registered agent for service, Carmen Popovitch, at 1271 Marietta Blvd., NW, Atlanta, GA 30318.

12.

Popovitch is a natural person who resides in Fulton County, Georgia.

13.

Popovitch may be served with process at her residence located at 10625 Roxburgh Lane, # 16Y, Roswell, GA 30076, or wherever she may be found.

14.

Popovitch is subject to the personal jurisdiction of this Court.

### 4.  JOINT EMPLOYER STATUS

15.

At all times during the three years prior to the initiation of this litigation, ("the Relevant Time Period") 1715 owned and operated a night club under the trade name "Diamond Club" located at 1715 Northside Drive, NW, Atlanta, Georgia 30318.

16.

At all times during the Relevant Time Period, the Diamond Club featured

entertainment in the form of nude female dancing.

17.

At all times during the Relevant Time Period Veronica owned and operated an adult night club located at 1271 Marietta Boulevard., NW, Atlanta, GA 30318.

18.

Until June 2016, Veronica's nightclub at 1271 Marietta Boulevard., NW, Atlanta, GA 30318 operated under the trade name "Diamonds of Atlanta".

19.

Since June 2016, Veronica's nightclub at 1271 Marietta Boulevard., NW, Atlanta, GA 30318 operated under the trade name "VLive".

20.

During the Relevant Time Period until June 2016, Diamonds of Atlanta featured entertainment in the form of nude female dancing.

21.

During the Relevant Time Period after June 2016, VLive featured entertainment in the form of nude female dancing.

22.

At all times during the Relevant Time Period, Popovitch has served as Veroncia's Chief Executive Officer, Chief Financial Officer, and Secretary.

23.

At all times during the Relevant Time Period Popovitch has served as 1715's Chief Executive Officer, Chief Financial Officer, and Secretary.

24.

During the Relevant Time Period, 1715 and Veronica shared the services of the dancers who worked at the nightclubs.

25.

During the Relevant Time Period, 1715 instructed Diamond Club dancers to perform shifts at Diamonds of Atlanta/VLive.

26.

During the Relevant Time Period, 1715 and Veronica shared control of their employees, including their dancers.

27.

At all times during the Relevant Time Period, Popovich exercised control over both 1715 and Veronica.

28.

At all times during the Relevant Time Period, Plaintiffs have been under the direct control of both 1715 and Veronica.

29.

At all times during the Relevant Time Period, 1715 and Veronica have exercised joint control over the Plaintiffs in their capacity as dancers.

30.

At all times during the Relevant Time Period, Veronica and 1715 acted directly or indirectly in the interest of each other with respect to Plaintiffs.

31.

At all times during the Relevant Time Period, 1715 and Veronica comprised a single "enterprise engaged in commerce" as defined in FLSA §3(s)(1)(C); 29 U.S.C. § 203(s)(1 )(C).

32.

At all times during the Relevant Time Period, 1715 and Veronica have been a joint employer of Plaintiffs within the meaning of the FLSA.

## 5.    ENTERPRISE COVERAGE

33.

During 2015, 1715 had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

34.

During 2016, 1715 had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

35.

During 2017, 1715 had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

36.

During 2018, 1715 had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

37.

During the Relevant Time Period, two or more employees of 1715, including Jefferson and Maddix, used or handled the following items (among others) that moved in interstate commerce that are necessary for performing its commercial purpose: liquor, spirits, computers, office furniture, office technology, beer, and glassware.

38.

During 2015, 1715 had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

39.

During 2016, 1715 had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

40.

During 2017, 1715 had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

41.

During 2018, 1715 had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

42.

At all times during the Relevant Time Period, 1715 was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a).

43.

During 2015, Veronica had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

44.

During 2016, Veronica had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

45.

During 2017, Veronica had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

46.

During 2018, Veronica had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

47.

During the Relevant Time Period, two or more employees of Veronica, including Jefferson and Maddix, used or handled the following items (among others) that moved in interstate commerce that are necessary for performing its commercial purpose: liquor, spirits, computers, office furniture, office technology, beer, and glassware.

48.

During 2015, Veronica had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

49.

During 2016, Veronica had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

50.

During 2017, Veronica had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

51.

During 2018, Veronica had two or more "employees handling, selling or

otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

52.

At all times during the Relevant Time Period, Veronica was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a).

## 6. STATUTORY EMPLOYER ALLEGATIONS

53.

At all times material hereto, 1715 was an "employer" of Plaintiffs as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

54.

At all times material hereto, Plaintiffs were "employees" of 1715 as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

55.

At all times during the Relevant Time Period, Veronica was an "employer" of Plaintiffs as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

56.

At all times during the Relevant Time Period, Plaintiffs were "employees" of Veronica Enterprises as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

57.

At all times during the Relevant Time Period, Popovich was a corporate officer of 1715.

58.

At all times during the Relevant Time Period, Popovich was a corporate officer of Veronica.

59.

At all times during the Relevant Time Period, Popovitch was involved in the day-to-day operations of 1715, including its nightclub operating under the trade name Diamond Club.

60.

At all times during the Relevant Time Period, Popovitch has was involved in the day to day operations of Veronica including its nightclub operating under the trade names Diamonds of Atlanta/VLive.

61.

At all times during the Relevant Time Period, 1715 vested Popovitch with supervisory authority over Plaintiffs.

62.

At all times during the Relevant Time Period, Veronica Enterprises vested

Popovitch with supervisory authority over Plaintiffs.

<div align="center">63.</div>

At all times during the Relevant Time Period, Popovitch exercised supervisory authority over Jefferson.

<div align="center">64.</div>

At all times during the Relevant Time Period, Popovitch exercised supervisory authority over Maddix.

<div align="center">65.</div>

At all times during the Relevant Time Period, Popovitch scheduled Plaintiffs' working hours or supervised the scheduling of Plaintiffs' working hours.

<div align="center">66.</div>

At all times during the Relevant Time Period, Popovitch exercised authority and supervision over the work rules that 1715 applied to dancers at the Diamond Club, including Plaintiffs.

<div align="center">67.</div>

At all times during the Relevant Time Period, Popovitch exercised authority and supervision over the work rules that Veronica applied to dancers at the Diamonds of Atlanta/VLive, including Plaintiffs.

68.

At all times during the Relevant Time Period, Popovitch exercised authority and supervision over Plaintiffs' compensation.

69.

At all times during the Relevant Time Period, Popovitch was an "employer" of Plaintiffs as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

70.

At all times during the Relevant Time Period, Plaintiffs were "employees" of Popovitch as defined in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

## 7.    ADDITIONAL FACTUAL ALLEGATIONS

71.

Defendants employed Jefferson as a dancer from on or about July 2015 through and until May 30, 2018.

72.

Jefferson worked as a dancer at Diamond Club during each week from July 2015 until May 30, 2018.

73.

Jefferson also worked as a dancer at VLive from May 2017 until May 30, 2018.

74.

During the Relevant Time Period, Jefferson regularly worked at Diamond Club 4-5 day shifts during week days from 12:00 p.m. until 9:00 p.m.

75.

During the Relevant Time Period, Jefferson regularly worked at Diamond Club on Saturdays from 3:00 p.m. until 9:00 p.m.

76.

From May 2017 until May 30, 2018, Jefferson regularly worked at VLive approximately two Saturdays and an occasional Wednesday during each month.

77.

From May 2017 until May 30, 2018, Jefferson regularly worked at VLive from 3:00 p.m. until 9:00 p.m. during each work shift.

78.

Defendants employed Maddix as a dancer from March 2013 through and until May 30, 2018.

79.

Plaintiff Maddix worked as a dancer at Diamond Club from on June 2015 until May 30, 2018.

80.

Plaintiff Maddix worked as a dancer at Diamonds of Atlanta from June 2015 through and until June 2016.

81.

Plaintiff Maddix worked as a dancer at VLive at all times relevant from on or about June 2016 through and until May 30, 2018.

82.

During the Relevant Time Period, Maddix regularly worked at Diamond Club on Monday, Tuesday, and Thursday from 8:00 p.m. until 3:00 a.m.

83.

During the Relevant Time Period from June 2015 until June 2016, Maddix regularly worked at Diamonds of Atlanta on Wednesday, Friday and Saturday from 10:00 p.m. until 3:00 a.m.

84.

During the Relevant Time Period, Defendants often assigned Maddix to alternate her work days each week between Diamond Club and VLive.

85.

At all times during the Relevant Time Period, Defendants employed persons known as "sweepers" who were responsible for collecting all tips for dancers, including Plaintiffs.

86.

At all times during the Relevant Time Period, Defendants required their sweepers to wait until the end of each shift before distributing tips to its dancers, including Plaintiffs.

87.

At all times during the Relevant Time Period, Defendants required its dancers, including Plaintiffs, as a condition of employment, to remit a portion of their tips as "fees" to Diamond Club owners, agents, and employees.

88.

At all times during the Relevant Time Period, Plaintiffs were required to pay each sweeper 5% of tips they earned at each work shift.

89.

At all times during the Relevant Time Period, Defendants required its dancers, including Plaintiffs, to pay a "tip-out" to the Diamond Cub DJ of $10.00-$15.00 in conjunction with each shift worked.

90.

At all times during the Relevant Time Period, Defendants required its dancers, including Jefferson, to pay a fee of $20.00 to the "House Dad" at Diamond Club in conjunction with each private dance performed during each day shift worked.

91.

At all times during the Relevant Time Period, in addition DJ and House Dad fees, Defendants required Jefferson to pay the Diamond Club a tip-out of $35.00-$40.00, in conjunction with each day shift she worked.

92.

 During the Relevant Time Period, Defendants failed to pay Jefferson any wages or compensation whatsoever.

93.

At all times during the Relevant Time Period, Defendants required Plaintiff Maddix to pay a "tip-out" to the House Mom of $20.00 at Diamond Club in conjunction with each shift she worked.

94.

At all times during the Relevant Time Period, Defendants required Plaintiff Maddix to pay a fee of 5-10% of tips she received at Diamond Club to the House Dad.

95.

At all times during the Relevant Time Period, in addition to DJ, House Mom and House Dad fees, Defendants required Maddix to pay the Diamond Club a tip-out of $120, in conjunction with each day shift she worked.

96.

At all times during the Relevant Time Period, Defendants required its dancers, including Plaintiff Maddix, to pay a "tip-out" to the Diamonds of Atlanta/VLive DJ of $15.00 in conjunction with each shift worked.

97.

At all times during the Relevant Time Period, Defendants required Plaintiff Maddix to pay a "tip-out" to the House Mom of $30.00 at Diamonds of Atlanta/VLive in conjunction with each shift she worked.

98.

At all times during the Relevant Time Period, Defendants required Plaintiff Maddix to pay 10% of each "bag" she earned to the club during each work shift.

99.

At all times during the Relevant Time Period, Maddix normally paid $75-$150 in fees to Diamonds of Atlanta/VLive in conjunction with each shift she worked.

100.

During the Relevant Time Period, Defendants failed to pay Maddix any wages or compensation whatsoever.

101.

At all times during the Relevant Time Period, Defendants directly and indirectly controlled its dancers' work schedules.

102.

At all times during the Relevant Time Period, Defendants' managers exercised the supervisory authority to require dancers to change their attire.

103.

At all times during the Relevant Time Period, Defendants' managers exercised the supervisory authority to require dancers to change their hairstyle.

104.

At all times during the Relevant Time Period, Defendants' managers exercised the supervisory authority to require dancers to change their makeup.

105.

At all times during the Relevant Time Period, Defendants' managers exercised the supervisory authority to prohibit a dancer from performing.

106.

At times during the Relevant Time Period, Defendants' DJ's gave dancers instructions to remove clothing while on stage.

107.

At times during the Relevant Time Period, Defendants' DJ's called dancers to dance on stage on a set rotation.

108.

At all times during the Relevant Time Period, Defendants' maintained a dressing room for its dancers at each nightclub.

109.

At all times during the Relevant Time Period, the Clubs posted notices and work for dancers in the dressing rooms.

110.

At all times during the Relevant Time Period, Defendants' managers exercised the supervisory authority to impose discipline upon their dancers, including fines warnings, suspensions, and terminations.

111.

For example, Defendants subjected dancers at VLive with a $30 fine if they spent more than 45 minutes in the dressing room at the start of a shift.

112.

At all times during the Relevant Time Period, Defendants' managers supervised dancers on a day-to-day basis.

113.

At all times during the Relevant Time Period, Defendants' bore all costs associated with advertising, marketing, and promoting Diamond Club.

114.

At all times during the Relevant Time Period, Defendants' bore all costs associated with advertising, marketing, and promoting Diamonds of Atlanta/VLive.

115.

At all times during the Relevant Time Period, Defendants' employed a disc jockey ("the DJ") at each nightclub who operated Defendants' music and made announcements to customers and dancers.

116.

At all times during the Relevant Time Period, Defendants' DJ determined the order and rotation by which dancers would be scheduled to perform.

117.

At all times during the Relevant Time Period, Defendants posted notices and

work rules for its dancers and other employees at their nightclubs.

118.

At all times during the Relevant Time Period, Defendants posted notices and work rules for its dancers in the dressing room.

119.

At all times during the Relevant Time Period, Defendants' managers ensured that dancers complied with its rules and policies.

120.

At all times during the Relevant Time Period, Defendants did not require applicants for dancing positions to have experience or training prior to hire.

121.

At all times during the Relevant Time Period, Defendants advertised their businesses.

122.

At all times during the Relevant Time Period, such advertisements included photographs of scantily clad women.

123.

At all times during the Relevant Time Period, the presentation of nude female dancing was integral to Defendants' business model and success.

124.

At all times during the Relevant Time Period, the clubs provided all stages used for dancer performances at the clubs.

125.

At all times during the Relevant Time Period, the clubs provided all poles used for dancer performances at the clubs.

126.

At all times during the Relevant Time Period, as a matter of economic reality Jefferson was an "employee" as that term is used in the FLSA, rather than an independent contractor.

127.

At all times during the Relevant Time Period, as a matter of economic reality Maddix was an "employee" as that term is used in the FLSA, rather than an independent contractor.

128.

At all times during the Relevant Time Period, Defendants were Plaintiffs' "employers" as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

129.

At all times during the Relevant Time Period, Defendants misclassified

Jefferson as an independent contractor.

130.

At all times during the Relevant Time Period, Defendants misclassified Maddix as an independent contractor.

131.

At all times during the Relevant Time Period, Defendants knew or should have known that Plaintiffs were covered by the minimum wage and maximum hours provisions of the FLSA.

132.

At all times during the Relevant Time Period, the FLSA minimum wage was s$7.25 per hour.

133.

At all times during the Relevant Period, Defendants failed to compensate Jefferson at a rate of $7.25 per hour for each hour she worked.

134.

At all times during the Relevant Period, Defendants failed to compensate Maddix at a rate of $7.25 per hour for each hour she worked.

135.

At all times during the Relevant Period, Defendants failed to pay Jefferson any

wages or compensation whatsoever.

136.

At all times during the Relevant Time Period, Jefferson's sole form of remuneration was the receipt of tips from Defendants' customers.

137.

At all times during the Relevant Period, Defendants failed to pay Maddix any wages or compensation whatsoever.

138.

At all times during the Relevant Time Period, Maddix's sole form of remuneration was the receipt of tips from Defendants' customers.

139.

At all times during the Relevant Period, Plaintiffs regularly worked more than 40 hours per week on behalf of Defendants.

140.

During the Relevant Time Period, Defendants failed to pay Plaintiffs at one-and-one-half times their regular rates for work performed in excess of 40 hours in a workweek.

141.

During the Relevant Time Period, Defendants willfully failed to pay Plaintiffs

at one-and-one-half times their regular rates for work performed in excess of 40 hours in a workweek.

142.

At all times during the Relevant Time Period, Plaintiffs were not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

143.

At all times during the Relevant Period, Plaintiffs were not exempt from the maximum hours requirements of the FLSA by reason of any exemption.

## 8.    COUNT I - FAILURE TO PAY MINIMUM WAGE

144.

The allegations in all previous paragraphs are incorporated by reference as if fully set out herein.

145.

At all times during the Relevant Period, Plaintiffs were employees covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

146.

At all times during the Relevant Period, Defendants failed to compensate Plaintiffs at an hourly rate above or equal to the minimum wage.

147.

At all times during the Relevant Period, Defendants willfully failed to compensate Plaintiffs at an hourly rate above or equal to the FLSA minimum wage.

148.

Defendants' mandate that Plaintiffs pay fees to the Clubs and club managers, and other employees violated the "free and clear" requirement set forth in 29 CFR 531.35.

149.

As a result of its underpayment of minimum wages as alleged above, Plaintiffs are entitled to payment of minimum wages by Defendants, jointly and severally, in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

150.

As a result of its violation of the "free and clear" requirement set forth in 29 CFR 531.35, Plaintiffs are entitled to recover from Defendants, jointly and severally, all fees and fines that the Clubs required them to pay as a condition of employment.

151.

As a result of Defendants' willful underpayment of minimum wages as alleged above, Plaintiffs are entitled to an award of liquidated damages from Defendants, jointly and severally, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

152.

As a result of its underpayment of minimum wages as alleged above, Defendants are jointly and severally liable to Plaintiffs for their costs of litigation, including their reasonable attorney's fees, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

## 9.    COUNT II - FAILURE TO PAY OVERTIME

153.

The allegations in all previous paragraphs are incorporated by reference as if fully set out in this paragraph.

154.

At all times during the Relevant Period, Plaintiffs were employees covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

155.

At all times during the Relevant Period, Plaintiffs regularly worked in excess of 40 hours per week.

156.

Defendants failed to pay Plaintiffs at one-and-one-half times their regular rates for work in excess of 40 hours in any week during the entire period of their employment.

157.

Defendants willfully failed to pay Plaintiffs at one-and-one-half times their regular rates for work in excess of 40 hours in any week during the entire period of their employment.

158.

As a result of the underpayment of overtime compensation as alleged above Plaintiffs are entitled to payment of overtime wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

159.

As a result of the willful underpayment of overtime compensation as alleged above, Plaintiffs are entitled to liquidated damages in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

160.

As a result of the underpayment of overtime compensation as alleged above, Plaintiffs are entitled to their litigation costs, including their reasonable attorney's

fees, in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

WHEREFORE, Plaintiffs respectfully pray:

1.  That Plaintiffs be awarded amounts to be determined at trial against Defendants in unpaid minimum wages due under the FLSA, plus additional like amounts in liquidated damages;

2.  That Plaintiffs be awarded amounts to be determined at trial against Defendants in unpaid overtime wages due under the FLSA, plus additional like amounts in liquidated damages;

3.  That Plaintiffs be awarded nominal damages;

4.  That Plaintiffs be awarded their costs of litigation, including their reasonable attorneys' fees from Defendants; and

5.  For such other and further relief as the Court deems just and proper.

Respectfully submitted, this 29th day of June 2018.

<div style="margin-left: 50%;">

**DeLong, Caldwell, Bridgers, Fitzpatrick & Benjamin, LLC**

*/s/ Charles R. Bridgers*
Charles R. Bridgers
Georgia Bar No. 080791

*/s/ Kevin D. Fitzpatrick, Jr.*
Kevin D. Fitzpatrick, Jr.
Georgia Bar No. 262375

</div>

3100 Centennial Tower
101 Marietta Street NW
Atlanta, GA 30303
404.979.3150
404.979.3170 (fax)
kevin.fitzpatrick@dcbflegal.com
charlesbridgers@dcbflegal.com